June, 1810.

SHELDON
v.
ACKLEY.

CHARLES SHELDON *against* ABIHU ACKLEY.

MOTION for a new trial.

The endorsee of a promissory note, in attempting to enforce the collection of it by suit against the maker, is not obliged to order the attachment or execution to be levied upon property notoriously of less value than the debt, or lose his hold of the endorsor to that amount. In an action by the endorsee of a promissory note against the endorsor, it appeared that an officer having in his hands an execution obtained in a suit on such note against the maker, took personal property of less value than the debt, and afterwards relinquished that property to the debtor, and took his body. Held that the officer was not a competent witness for the plaintiff to prove the fact of relinquishment, the effect of his testimony

This was an action of *assumpsit* by *Sheldon*, as endorsee of a promissory note, made by *Gilbert Wire*, for 150 dollars, with interest, payable on the 1st of *April*, 1808, against *Ackley* as endorsor. The contract of endorsement was thus stated : " For value received, I hereby assign the within note to *Charles Sheldon*, and do authorize him to sue for and collect the same in my name, and when collected to convert the same to his own use; and I do hereby warrant that the within note is due according to the tenor thereof, and that the same can be collected. *March* 1, 1808.    (Signed)      *Abihu Ackley*."

The declaration then stated, that a suit was brought on the note, immediately after it became due, by process of attachment against *Wire*, and a judgment recovered ; whereupon execution was taken out, and levied upon the body of *Wire*, by virtue of which he was committed to gaol; and that he afterwards took the poor prisoner's oath.

The defendant pleaded the general issue.

On the trial, it appeared that the plaintiff commenced an action on the note against *Wire*, by writ of attachment, on the 30th of *June*, 1808; that the writ was put into the hands of *John B. Ripley*, a deputy sheriff, who, by virtue thereof, on the 11th of *July* following, attached the body of *Wire*; that *Wire* thereupon turned out personal estate, which was of the value of 100 dollars, and no more, which the officer accepted, and endorsed the same as attached upon the writ; that on the second *Tuesday* of *August*, the plaintiff recovered judgment against *Wire* for 189 dollars and 45 cents damages, and 5 dollars and 38 cents costs ; that execution was thereupon taken out, and

being to protect himself from a suit by subjecting the defendant.

delivered to *Ripley*, who, on the 20th *September*, levied the same on the personal property of *Wire* which had been attached; that the property so levied upon was all the property of *Wire* that could be found; that the officer then relinquished the property so levied upon, and levied upon the body of *Wire*, and committed him to gaol; and that he afterwards took the poor prisoner's oath. Upon these facts, the court instructed the jury, that the plaintiff ought not to have suffered the officer to relinquish the property so levied upon, but to have caused the same to be sold, and applied to the execution as far as it would extend. As to so much of the plaintiff's demand as this property amounts to, he is therefore not entitled to recover. But as it appears, that this was all the personal property that could be found, and the body of the debtor has been taken, and he has taken the poor prisoner's oath, it has become certain that the residue of the execution was not collectable from him; and for that amount the plaintiff is entitled to a verdict.

In the course of the trial, the plaintiff, in order to prove that the personal property attached and levied upon was returned to *Wire*, as above stated, offered *Ripley*, the officer, as a witness; to whose admission the defendant objected; but he was admitted by the court, and testified accordingly.

The jury, pursuant to the direction of the court, found a verdict for the plaintiff, for the amount of the execution against *Wire* and costs, deducting the value of the property taken and relinquished.

The plaintiff thereupon moved for a new trial, because the court directed the jury to make this deduction. The defendant also moved for a new trial, on the ground that the court ought not to have admitted *Ripley* as a witness, and that they ought to have directed the jury to find a verdict for the defendant. A rule to show cause was granted on each motion, and the questions reserved for the consideration of the nine judges.

*H. Terry*, for the plaintiff.

*J. T. Peters*, for the defendant.

J. C. SMITH, J. This case comes before the court upon *two* rules to show cause why a new trial should not be granted. One obtained by the plaintiff, on the ground that the court directed the jury to deduct from the judgment recovered against the original promisor the value of certain property estimated at 100 dollars, which had been taken by the officer, and afterwards abandoned, but which might have been sold and applied. And the other obtained by the defendant on the suggestion that illegal evidence was admitted on the trial, and that the court ought to have directed the jury to find for the defendant.

The point of misdirection will be necessarily involved in the consideration of the question raised by the plaintiff. And here the simple inquiry is, whether the endorsee of a note of hand, in attempting to enforce the collection of it by suit, is *obliged* to order the attachment or execution to be levied upon property *confessedly less in value* than the debt, or lose his hold of the endorsor to that amount? I concurred in the opinion delivered to the jury. For it struck me at the trial, that, as the endorsee alone had the means in his power, it would be fair and equitable in him to make even a partial collection of a promisor under failing circumstances, and thus save something from the wreck of his affairs for the benefit of the endorsor. But I am satisfied, upon reflection, there is nothing in the contract of assignment that imposes this upon him as a *duty*. He is obliged only to pursue with diligence the proper legal measures for the recovery of the money. If these fail, the endorsor is holden. He is not required to give any directions to the sheriff. These are contained in the writ. And unless it can be shown that by law the sheriff is bound to levy, at his own risk and hazard, upon goods notoriously

of less value than the debt, there is no pretence to say the endorsee is responsible for such goods; or, which is the same thing, that their value shall be deducted from the amount of his claim upon the endorsor.

Admitting, if a partial satisfaction had been obtained, that the endorsor would be liable for the residue, still it by no means follows that the endorsee is to be tied up to a strict account for every article of property, however inadequate to the demand, which might by possibility have been secured from the maker of the note. The law attaches no such conditions to the warranty. Nor is the endorsor to be released from any part of his liability on such grounds. As the principle assumed at the circuit goes, in my view, to this extent, I cannot but consider the direction to the jury as clearly improper.

Secondly, exception is taken by the defendant to the admission of *Ripley*, the deputy sheriff, as a witness.

It was agreed at the trial, that this officer had levied the execution upon the goods of *Wire*, the promisor, and had advertised them for sale according to law. It likewise appeared he had arrested the body of *Wire*, and committed him to gaol. The defendant insisted, that by taking the body whilst the levy upon the goods was in full force and operation, the deputy sheriff had made himself responsible for the debt, and to him the plaintiff ought to resort for payment. To repel this defence the plaintiff offered the deputy sheriff to testify, that in a formal manner he abandoned the levy upon the goods which he found were insufficient to satisfy the execution, and gave notice of the abandonment to *Wire* before his body was taken. The objection to his competency was overruled by a majority of the court. My opinion then was, and still is, that he had a direct interest in the event of the cause; not because the verdict would be evidence in his favour, or against him, for this is not the only criterion of interest, but because the effect of his testimony necessarily was to *protect himself from a suit* by subjecting the defendant. This is a fatal objection. The rule

is so laid down in all the treatises upon evidence, and was expressly adopted in *Rothewe et al.* v. *Elton, Peake's Cas.* 84. where Lord *Kenyon* held, that a witness was incompetent not only in those cases where the verdict would be evidence for or against him; but where he comes to exonerate himself from an action to which he would be liable if the plaintiff there failed.

It is no answer to the objection, that the witness was also liable to *Wire* in an action for false imprisonment. There would be some force in the argument, provided his evidence conduced to establish the claim of *Wire* whilst it excused him from that of the plaintiff.    But its direct tendency could be no other than to discharge him equally from both.

For these reasons I am of opinion *both* rules ought to be made absolute.

BALDWIN, J. concurred in this opinion on the first point; but on the other point he dissented.

MITCHELL, Ch. J. and REEVE, SWIFT, TRUMBULL, EDMOND, and BRAINERD, Js. concurred on both points.

N. SMITH, J.    This was an action in favour of the plaintiff as endorsee against the defendant as endorsor of a note of hand against *William Wire.*

On trial to the jury, it appeared that the plaintiff prayed out a writ of attachment against *Wire;* and property to the amount of 100 dollars was taken on it, being all the property which *Wire* owned.    Afterwards an execution was obtained and put into the hands of *J. B. Ripley*, a deputy sheriff, who levied it on the property so attached; and on further proceeding in the cause, it appeared that *Ripley* had, after taking this property, levied on the body of *Wire;* and to evince the regularity of this procedure, the plaintiff offered *Ripley* to prove that the property was by him released to the debtor before he levied on the body.

The admission of the officer was opposed by the defendant on the ground of a supposed interest in the event of the suit; but the court was of opinion that the interest, if any, was in the question merely, and overruled the objection.

In further proceeding on the trial, it became manifest, that the property was of the full value of 100 dollars; that there was no question about the title to it; and that the debtor owned no other property, nor was there any reasonable prospect of collecting any thing by taking the body.

Under these circumstances, the court thought it very imprudent to release the property; and events show that a real loss to its full amount has been occasioned by it. The court were therefore of opinion, that in point of law, the loss ought to fall on the endorsee, and charged the jury to that effect.

I was in the opinion of the court on the circuit, and on more mature reflection have not altered that opinion since.

I am yet unable to see how *Ripley* was interested in the event of this suit. Should any question arise between him and creditor or debtor, the verdict in this case cannot be given in evidence. But it has been said, he is interested to establish a recovery against the defendant, because by this he discharges himself from his liability to the plaintiff. To give this argument validity, it should first appear that *Ripley* is liable to the plaintiff, which cannot be proved; should he be called on, he may show by other testimony that he released the property, before he took the body; or he may show he acted wholly by the orders and direction of the plaintiff. The mere danger of a suit has ever been considered too remote an interest to exclude a witness. Besides, there does not appear to be even *that* in the present case; indeed, the plaintiff, so far from having a claim on the witness for

any irregularity in his proceeding, insists that the re-verse is true, and attempts to prove it.

The point on which the court instructed the jury is important, and of novel impression; it depends much on the nature of an assignment. In my judgment, the assignee is to act the part of a faithful attorney to the assignor, and that he was guilty of gross negligence in not giving the officer either general discretionary orders, or particular orders not to release the property in question. Though the officer, without instructions from the assignee, was not obliged to hold property to less amount than the debt; yet the assignee ought to use a sound discretion, and to conduct as a prudent man would in his own affairs, and give the officer directions accordingly. Had the note not been assigned, the assignor would undoubtedly have availed himself of this property; by the assignment, he has put it out of his power to control the officer, and is not supposed to be privy to the process.

It has long been held in this state, that the assignee is not obliged to take the body in order to subject the assignor, when no reasonable prospect exists of obtaining the debt by it; of course, the assignee might safely have disposed of the property taken, although by that means he had failed of taking the body; because taking the body would be of no use, and was calculated to make unnecessary expense.

Indeed, the assignee, after the property was released, was not bound to cause the execution to be levied on the body; and his claim is no stronger against the assignor than it was before. It appears to me, therefore, that as the assignee is not bound to take the body of his debtor, and thereby incur unnecessary expense; and as he may have his remedy against the assignor without taking it; there can be no possible reason why he should not take property, and dispose of it as far as it goes, and then call on the assignor for the surplus.

Upon a contrary principle, there may be a clear, un-
questionable personal estate in the hands of the debtor to
the amount of a thousand dollars, and because it falls
one dollar short of the debt, the assignee may neglect
to take it; and after the property is squandered by the
debtor, throw the whole loss on the assignor.

The inquiry in all those cases should be, whether the
assignee has conducted with such gross negligence as
would subject an attorney, with general discretionary
powers, to the loss of a debt.

New trial to be granted.