## WELTON *against* SCOTT.

The contract by indorsement in blank of a note not negotiable, is, that such note is collectible according to its tenor, by the use of due diligence.

The assignee of such note is not an agent, but virtually a purchaser; and the contract of assignment is the measure of his rights and duties.

The diligence required of the assignee, in general, is to put the note in suit, by attachment, as soon as it is due.

If, however, the maker, when the note falls due, is insolvent, and without property sufficient to pay it, that fact of itself constitutes a breach of the warranty, and gives the assignee an immediate right of action against the assignor.

If the maker be not insolvent, and yet property sufficient to satisfy the debt cannot be taken by attachment, it is the duty of the assignee to arrest his body.

In no case, is it incumbent on the assignee of a note payable in money, in order to subject the assignor, to attach the land of the maker.

Nor is it the duty of the assignee to attach personal property of the maker insufficient to satisfy the debt.

Nor is it the duty of the assignee to give any special directions to the officer as to the service of the attachment.

If the assignee direct the officer to take specific articles of personal property of less value than the debt, this will not limit his search to those articles, nor absolve him from any duty which the law prescribes.

This was an action of *assumpsit*, in favour of the assignee, against the assignor of a promissory note not negotiable, made by one *Orlando Porter*.

The cause was tried at *Litchfield, February* term, 1822, before *Chapman*, J.

The making of the note, and the assignment of it, by an indorsement in blank, were admitted. The defence was, that due diligence had not been exercised in obtaining payment of it. To make out this defence, the defendant offered evidence to prove, and claimed that he had proved, that *Porter*, at the time when the note was sold and delivered to the plaintiff, and at the time when a writ of attachment on the note was delivered into the hands of the officer, owned and possessed a sufficient estate, real and personal, in the town of *Waterbury*, where he lived, and so situated that the officer could, by the exercise of due diligence, have secured thereby the full amount of the note and costs. The defendant also proved, that while the officer had said writ of attachment in his hands, he met with *Porter*, at an attorney's office in *Waterbury*, and might, without any difficulty, if he had chosen so to do, have taken his body. This the officer neglected to do, at that time ; though the body of *Porter* was

HARVARD LAW LIBRARY

*Litchfield,*
*June,*
*1823.*

*Mitchell*
*v.*
*Hazen.*

afterwards, on the same day, arrested, by him. The defendant also introduced evidence to prove, and claimed that he had proved, that the plaintiff, when he delivered said writ of attachment to the officer, directed him to levy it on a wagon and pair of horses belonging to *Porter;* in consequence of which, the officer did not feel himself bound to search for other property, or to take the body of *Porter.* The defendant, therefore, claimed, that neither the plaintiff, nor the officer, had used due diligence in the prosecution of said writ of attachment; and he prayed the judge to instruct the jury, that if they should find, that the plaintiff or the officer had not exercised due diligence in securing the debt; or if they should find, that *Porter* was possessed of personal property, partly, though not fully, sufficient to satisfy the claim, on which the officer might, by the use of due diligence, have levied the attachment, he was bound by law to do so ; or if they should find, that *Porter* owned and possessed real estate, he was bound by law to have attached it, or to have taken the body. The judge charged the jury as follows : " The only question is as to the plaintiff's having used due diligence in endeavouring to collect the note. The court instructs you, that the plaintiff was not bound to take either the real estate, or the body, of the maker of the note. He was bound immediately to pray out an attachment, and deliver it to an officer, whose duty it was, to attach personal property sufficient to satisfy the damages, which might be recovered in the suit ; and for that purpose, he was bound to make all reasonable search. If personal property, sufficient to pay a part only of the note could be found, he was not bound to attach it. If the maker of the note had personal property to a greater amount than sufficient to pay the damages, which might be recovered ; yet if the officer did not know the fact, and could not find such property, by diligent search ; this will form no objection to the plaintiff's right of recovery. Bankruptcy in the maker of the note, was not necessary to be proved, to entitle the plaintiff to recover ; nor was it necessary, that the plaintiff, when he gave the officer the attachment, should have given him any special directions as to the service of it."

The jury gave a verdict for the plaintiff; and the defendant moved for a new trial, on the ground of a misdirection.

*Benedict* and *J. W. Huntington,* in support of the motion, contended, 1. That that part of the judge's charge, which

stated, that the assignee of a note not negotiable, is not bound to take *the body* of the maker, in order to charge the assignor, was incorrect. He is bound to take it, when, by so doing, there is reasonable ground to believe, that it will cause the payment of the debt. *Swift's Evid.* 346, 7. And there is such reasonable ground, when the maker is the owner of real estate sufficient to pay the debt.

*Litchfield,*
*June,*
1823.

Welton
*v.* — —
Scott.

2. That the holder of the note, in this case, was bound to attach *real estate*. The engagement of the assignor, is, that the note is *collectible*. A debt of any description is no otherwise collectible than out of the *estate* of the debtor. The question, then, is, out of *what* estate does the assignor contract that the note shall be satisfied? Does his engagement require a payment of the note in *money only?* Or, if it be satisfied, by a levy on *land*, is not his warranty complied with? It will be said, that the debt is due in money; and that this is what the assignor, when he assigns the note, engages that the assignee shall receive. But this argument is unsound. If money only is to be received, why is the assignee bound to attach *personal* estate? It is because he is bound to use his endeavours to obtain *satisfaction* of the note. The assignor becomes liable, not merely because the maker *does not pay* at the day, or indeed afterwards; nor is it because he *cannot* pay the money; but it is because he has not estate, out of which the note can be satisfied. Now, why is it not reasonable, that if property of *any* description can be found, it should be taken? And what injustice is done to the holder? Why ought not the term "collectible" to be understood as meaning a satisfaction out of any estate, which, by law, can be applied to produce it? Would not an attorney, acting with a general discretionary power, be obliged to take real estate? And is not the assignee, in contemplation of law, the agent of the assignor? *Colbourn* v. *Rossiter*, 2 *Conn. Rep.* 503. 505, 6. In *Phelps* v. *Foot*, 1 *Conn. Rep.* 387. 390, 1. the agreement was, to have the writ special, and to direct the officer to secure the debt, if he could; which is precisely the engagement implied in the assignment of a note not negotiable; and yet the court, in that case, decided, that the party was bound to secure the debt, by taking *land*, if in his power. See also *Swift's Evid.* 347.

3. That the direction to the jury, that if personal property sufficient to pay a part only of the note, could be found,

*Litchfield,*
*June,*
*1823.*

*Welton*
*v.*
*Scott.*

the officer was not bound to attach it, was incorrect. Why ought he not to take what he can get? And what injury is sustained, if he does? An act so perfectly reasonable, and subjecting the assignor to no possible loss, nor inconvenience, ought not to be prohibited, or dispensed with, except upon the most solid grounds. The law requires process by attachment, for the *benefit* of the assignor; not merely to enable the holder to charge him with the debt. This part of the charge is evidently founded upon the case of *Sheldon* v. *Ackley*, 4 *Day* 458. Some of the considerations, which led to that decision, are not applicable to the present case; and the principles adopted by the majority of the court, are hardly reconcileable with justice or good policy. The mere fact of the holder's taking part payment of a bill, has never been considered as discharging the indorser; it being in aid of all the parties liable upon the bill. *Gould* & al. v. *Robson* & al. 8 *East* 576. 580. *James* v. *Badgers*, 1 *Johns. Ca.* 131. *Chitt. Bills* 304.

4. That the judge ought to have instructed the jury, that although the *officer* had used due diligence, yet if the holder had not, there could be no recovery. According to the charge given, the holder had nothing to do, but to pray out a writ of attachment, and deliver it to the officer; and was not bound to give any special directions concerning the service of it. The case shews, that there was personal property belonging to the maker, which the holder of the note knew of; but by the charge, it was immaterial whether he did, or did not, know; if the officer could not find any, the defendant was to be subjected. Is it true, that nothing can be required of the holder, but to put a writ of attachment into the hands of an officer? Is the whole duty thenceforth cast upon the officer? Suppose the holder knew of property, which could not be found by the officer—*e. g.* oxen at a distance, goods in the possession of another, &c.—would it not be his duty to point it out to the officer?

5. That the judge should have instructed the jury, that if they should find, that the assignee gave special directions to attach particular articles of personal property (of which the defendant gave evidence) the officer was not bound to make search elsewhere; that it exonerated him from any further duty; and that this interference, on the part of the assignee, discharged the assignor. The effect of these directions

might have been, to prevent the officer from making any further search; and thus the debt might have been lost.

*Bacon* and *Curtiss*, contra, remarked, that the judge was requested to charge the jury on two points only, *viz.* whether the officer was bound to take *land*, and whether he was bound to take *an insufficient amount of personal property*; that the body of the debtor was in fact taken; and that, therefore, the question whether the officer was bound to take it, did not properly arise in the case. They, however, contended, 1. That that part of the charge, which related to the taking of the body, was in itself correct. It will not be claimed, that due diligence requires an arrest of the body in *all* cases. This is clearly not implied in the contract of assignment. 4 *Day* 464. *per N. Smith*, J. Then, is the law so, that there must, in each case, be a trial, to ascertain whether an arrest would be available or not, before the party or the officer can know his duty? Or must the officer arrest or not, at his peril, accordingly as it may afterwards appear, that the probable result was one way or the other? Who, in such a situation, would be willing to act at all? Such an uncertainty would put an end to the assignment of notes.

2. That the plaintiff was not bound to take *land*. By the assignment, the assignor stipulated, that the maker should pay the note according to its tenor, which was *in money*; or that the assignee, by the use of due diligence, should obtain payment *in money*. The taking of land could have no effect upon a breach of this stipulation.

3. That the plaintiff was not bound to attach personal property, if he could not find enough to pay the debt. The case of *Sheldon* v. *Ackley*, 4 *Day* 458. is decisive of this point. The contract of assignment requires that the *whole* debt should be paid; not merely that the assignor shall be liable for the *balance*, after deducting all which might, by possibility, have been secured from the maker. A partial satisfaction would, undoubtedly, enure to the benefit of the assignor, as it would extinguish the debt *pro tanto*; and the assignee may frequently, without impropriety, seek such partial satisfaction. But, as was said, in the case referred to, there is nothing in the contract of assignment, that imposes this upon him as a *duty*. He is obliged only to pursue, with diligence, the proper legal measures for the recovery of the

money ; and if these fail, the assignor is liable. [On the other points the counsel were stopped by the court.]

Hosmer, Ch. J. Two general questions are presented by the case before the court. 1. What is the nature of an indorsement in blank, on a promissory note not negotiable ? 2. What is the obligation the contract puts on the holder ?

1. By usage for a long period, perhaps immemorial, and by frequent adjudications on a subject of common occurrence, the nature of the indorsement alluded to, has been clearly and definitely established. I confine myself to the usage and decisions of this state, which have given a peculiar construction to the matter in question. The contract by an indorsement in blank on a note not negotiable, has long been settled to be, that such note is collectible according to its tenor, by the use of due diligence. This idea is fully expressed by the court, in *Bradley* & al. v. *Phelps,* 2 *Root* 325. decided nearly thirty years since. " In ordinary cases," say the court, " the indorser of a note undertakes that the money shall be obtained from the promiser, when it falls due, by the indorsee, he using due diligence, and taking the remedies which the law has provided ; but if the indorsee neglects to call on the promiser for the money when it becomes due, and suffers it to lie, without taking any legal steps to secure or recover it, the indorser will be exonerated, in case of a loss, unless the promiser was absolutely a bankrupt, when the note fell due." It is likewise said, by the court, that the unquestionable construction of a blank indorsement on a note not negotiable, is, that the indorsee shall be able to obtain the money when the note falls due. To the same effect are the observations, in his treatise on *Evidence,* (*p.* 342.) of the late Ch. J. *Swift,* whose long acquaintance with the usage and determinations of courts on this subject, gave him a familiar knowledge of the law. A blank indorsement, said he, contains a warranty, that the note is collectible, and that the maker is of sufficient ability to pay it ; that is, to make the indorsee satisfaction of the note according to its tenor. The nature of a blank indorsement, of a non-negotiable note, is so definitely established, and the language and import of the agreement so unquestionably clear, that the indorsee cannot legally insert over the indorser's name any special contract repugnant to this determinate and irrefutable engagement ; and if he in fact does, such pretended stipulation will be

void. *Swift's Evid.* 342. *Bradley* & al. v. *Phelps*, 2 *Root* 325. These remarks, perhaps, are unnecessarily particular; but I have been induced to make them, in order to put at rest, if possible, all future controversy relative to the nature of the contract under discussion.

*Litchfield,*
*June,*
*1823.*

Welton
*v.*
Scott.

2. Having stated the import of the contract in question, it remains to enquire what is the obligation it puts on the holder of the note.

In general, it may be observed, he is obliged to pursue with diligence, the proper legal measures for the recovery of the money, and if these fail, the indorser is holden. *Sheldon* v. *Ackley*, 4 *Day* 460. By way of exception, it may be remarked, that if the maker, when the note falls due, is insolvent, and without property to pay it, the contract of warranty is broken, and the assignee has an immediate right of action upon it. *Swift's Evid.* 346. 2 *Root* 325. But if the maker is solvent, the holder is bound to put the note in suit, by writ of attachment, as soon as it is due; and, unless the debt is secured by him, if it can be done, by the exertion of due diligence, he is guilty of neglect, and takes the responsibility on himself. *Swift's Evid.* 347.

The holder is not obliged to attach land, and for this very plain reason; it is the contract of the indorsee, that by due diligence, he shall be able to obtain payment of the note *according to its tenor*; and, of consequence, if payable in money, that he shall be satisfied in this medium. Land is not money; and therefore, the holder is not bound to take it. It has been insisted, that he was obliged to act the part of a faithful attorney or agent; but this wholly misconceives the nature of the transaction. The assignee is virtually a purchaser, and not an agent; and the obligations resting on him are only those which result from the contract of assignment. Now, this contract does not oblige him to receive land in payment of the note assigned, nor to levy on it for the benefit of the assignor; and were he to do it, he would not only extinguish the demand against the maker, but his claim against the indorser. I admit, that the assignee, by *special contract*, may subject himself to the obligation of taking land in payment, or of securing it for the benefit of the assignor; and this was precisely the case of *Phelps* v. *Foot*, 1 *Conn. Rep.* 387. But a blank indorsement infers no such liability. This opinion disposes of the first objection made.

It is, in the next place, claimed, that the body of the debtor

*Litchfield,*
June,
1823.

Welton
*v.*
Scott.

ought to have been promptly arrested; and it is denied, that this was done within a proper time.

It is unquestionably true, that if the debtor has real estate or other property, it is the legal duty of the assignee to attach his body, without any unreasonable delay, in order to coerce the payment of the demand. And it appears to have been the fact, that the body of the debtor was arrested on process, the day on which the writ issued, which was immediately after the note fell due, not at the earliest hour of the day, but probably after a due enquiry for property, and without suffering the lapse of any time unnecessarily. This, undoubtedly, was due diligence; and no sufficient objection to the proceeding below arises from this source.

The maker of the note had some personal property, but the jury were instructed, that the assignee was not bound to take it by process, if it fell, in any measure, short of the debt. A supposed incorrectness in the charge, as above expressed, constitutes a third objection in this case. The judge's charge is fully supported, by a decision of this Court, in *Sheldon* v. *Ackley*, 4 *Day* 458. made thirteen years since, and unquestioned to the present time. On the best consideration I have been able to give the subject, that determination was just. The misconception of the defendant, in this case, has its foundation in the want of a clear and accurate view of the point in question. He persists in considering the assignee of a note as the agent of the assignor, and then applies the rules of law, applicable to such an agency, to the present case. But the assignee, I repeat, is not an agent, but virtually a purchaser; and the contract between the parties is the measure of his rights and duties. The indorser has engaged, that by due diligence used, the assignee shall collect the *whole* debt, and if he cannot do this, the contract of warranty is broken. Besides, the inconvenience and delay, which must attend the principle now contended for, would manifestly be great. If there be *any* personal property, the assignee must commence his suit and pursue it, until, not improbably, after much expense and procrastination, judgment is obtained, execution issued and the property sold; and then he may demand of the assignor the unsatisfied balance of the note. That the parties, by a special contract, may render this proceeding necessary, cannot be disputed; but such an obligation never can result from an engagement that the debtor shall be

able to pay the assignee the whole sum due on the assigned note.

Finally, it is insisted, that the omission of the judge to charge the jury, that the direction given the officer to attach a horse and wagon, was a restriction on the enquiry whether he used due diligence in searching after other property. Instead of this, he informed them, that the plaintiff was not bound to give any directions, and that the officer was obliged by law to make all reasonable search in quest of estate. For this objection there does not exist the slightest foundation. The process put into the officer's hands, and the law of the land, gave him a full view of his duty. No directions to him were requisite; as they would, at best, have been repetitions, and so far as they were lawful, a mere lecture on his official duty. And with any correctness, it can never be said, that a direction to take an article of property, of much less value than the debt, absolved the officer from the search and enquiry, which the law had prescribed.

In conclusion, I am clear, that no error has intervened; and that a new trial ought not to be advised.

The other Judges were of the same opinion.

New trial not to be granted.