## PRENTISS *against* DANIELSON.

The indorsement in blank of a note not negotiable, implies a warranty, that the
maker is able to pay it, and that it is collectable, by the use of due diligence.

The exercise of due diligence, as applicable to this subject, if not waived, or the
want of it excused, consists in a demand of payment from the maker, as soon
as the note becomes due, and in case of non-payment, an immediate suit against
him, by attachment, followed by the most rigorous measures for the collec-
tion of the debt.

Where the holder of a note not negotiable, payable on the 25th of *March*, neg-
lected, until some time in the month of *July* following, to put such note in suit
against the maker; it was held, that such laches, in the absence of any excuse
or waiver, discharged the indorser from liability.

It is not necessary for the party insisting on the laches of the holder as a defence,
to shew that he has sustained actual damage.

The utter insolvency of the maker, so that process against him would be unavailable, excuses the neglect of suit.

An assignment, by the maker, before the note becomes due, of all his property, to the indorser, is a waiver, by the latter, of legal diligence.

So, if an indorser receives security to meet a particular indorsement, he thereby waives legal diligence in respect of that indorsement.

But where an indorser, after he had become discharged, by the laches of the holder, took an assignment of property from the maker, as security or indemnity for indorsements and liabilities on the maker's account; and it appeared, that such assignee was under indorsements and liabilities for the assignor, other than the indorsement of the note in question, to the full amount of the property assigned; it was held, that the taking of such assignment was not a waiver of legal diligence, so as to revive the extinguished liability of the indorser.

Where an indorser, after he had become discharged, by the laches of the holder, wrote a letter to the holder, who had arrested the body of the maker, advising him not to commit the maker to prison, as it would answer no good purpose; this was held to be no waiver of legal diligence, so as to affect the indorser's liability.

This was as an action against the defendant, as the indorser of a promissory note, tried at *Brooklyn, January* term, 1823, before *Brainard,* J., on an issue closed to the court.

On the 25th of *March,* 1818, *John Parish* made a promissory note, not negotiable, payable to the defendant, in six months. The defendant immediately indorsed it in blank, and delivered it to the plaintiff. At the expiration of the six months, the note not being paid, the defendant guaranteed it to the plaintiff, for another term of six months, making it ultimately payable on the 25th of *March,* 1819. The plaintiff held the note in his hands, without process against the maker, and without notice of non-payment to the defendant, until some time in *July,* 1819; when he commenced a suit on it, and attached the body of the maker. This suit went into final judgment; on which execution was taken out; and the officer was proceeding, for want of estate, to commit the debtor to prison; but in consequence of a letter from the defendant, expressing an opinion that it would answer no good purpose to commit him, he was not committed.

On the 19th of *October,* 1819, the defendant took from *Parish,* as security or indemnity for his indorsements for *Parish's* accommodation, and his liabilities for *Parish's* debts, a deed of a certain life-estate, and a bill of sale of certain household furniture; but the defendant was liable, as indorser and surety for debts of *Parish,* to the full amount of the property conveyed, aside from the note in question.

The counsel for the plaintiff claimed, that on the 25th of *March,* 1819, when the note ultimately fell due, *Parish* was a

total bankrupt; that, therefore, no suit or diligence with respect to him, was necessary; and that no notice to the defendant was necessary, other than reasonable notice before suit. They also contended, that if *Parish* was not a bankrupt, at the time the note fell due, still if the defendant could not shew, that the debt was lost, by the delay, he could not avail himself of the want of diligence by suit. They further claimed, that by taking the deed and bill of sale, the defendant waived all right to diligence or notice, other than reasonable notice before suit; the law implying, that he took the property to indemnify himself against this indorsement, as well as others. The defendant's counsel denied, that *Parish,* when the note fell due, was a bankrupt so as to excuse legal diligence. They contended, that it was the duty of the plaintiff immediately to commence a suit by attachment; and that by omitting it, the length of time he did, he discharged the indorser: That it was not incumbent on the defendant, to shew, that in point of fact the loss of the debt was occasioned by delay: That the law would not apply the property mentioned in the deed and bill of sale to indemnify the defendant against an indorsement, from which he had already been discharged, when he was holden for other indorsements and liabilities for *Parish,* to their full amount and value.

The court found, that at the time the note fell due, *Parish* was not such a bankrupt as to excuse the plaintiff from due diligence, by legal process; and thereupon decided, that the plaintiff, by his omission to commence suit for the length of time he did, discharged the indorser. The court further found, that at the time of taking the deed and bill of sale, the defendant was under indorsements and liabilities, other than the indorsement of this note, for debts of *Parish,* to the full amount of the property conveyed; and thereupon decided, that they were not applicable as an indemnity for this indorsement, and that the act was not a waiver of any claim for legal diligence. On the whole case, the court found the issue, and rendered judgment, for the defendant. The plaintiff moved for a new trial, on the ground, that the decision of the court, upon the facts found, was erroneous.

*Cleaveland* and *Holbrook,* in support of the motion, remarked, that every fact, which would be a waiver of demand and notice, or an excuse for the neglect of demand and notice, in relation to a negotiable note, will be a waiver of due diligence, or an excuse for the neglect of it, in a case like this. They

then contended, 1. That if the maker is unable to pay the note, at the time it falls due, the warranty implied in the indorsement, is broken, and no demand or suit is necessary. *Swift's Ev.* 342. 346. That *Parish* was a bankrupt, at that time, sufficiently appears from the case. The attempt of the court, while exercising the functions of a jury, to *qualify* the bankruptcy, was absurd and inoperative.

2. That it was, at least, incumbent on the defendant, to shew, that he had been subjected to loss or damage, by the want of diligence in the plaintiff.

3. That the interference of the defendant to prevent the commitment of *Parish*, was a waiver of further diligence. After having assumed the controul of the process, the defendant cannot complain that it was not more effectual.

4. That an assignment of property, by the maker of a note, to the indorser, as an indemnity or security for his indorsement, is a waiver of diligence in the holder, or an excuse for the omission of it. *Bond* & al. v. *Farnham*, 5 *Mass. Rep.* 170. The reason is, that the indorser has already in his hands all that even successful diligence could produce. Now, it is part of the case, that the property of *Parish* conveyed to the defendant, was conveyed as security or indemnity for his indorsements and liabilities, on *Parish's* account. Can the court see, that his liability on the note in question was not included? The fact that there were other liabilities, to which the security might be applied; or that the security was taken subsequent to the notes becoming due, with notice of all the facts; does not shew, that it was not applicable to this. In *Tower* v. *Durell*, 9 *Mass. Rep.* 332. it was decided, that if the security was taken, *without knowing* that due diligence had not been used, it was no waiver or excuse; but this implies, that if the party had knowledge of all the facts, it would have been an excuse or waiver.

*Goddard* and *Brainard*, contra, contended, 1. That the plaintiff was not excused for the want of due diligence, by the bankruptcy of *Parish*. The burden of making out the excuse rests upon the plaintiff; and for this purpose, he must shew an entire bankruptcy. If the maker is insolvent, with funds in his hands, diligence is the more necessary. But it is not positively shewn, that *Parish* was a bankrupt, in *any* sense; and that part of the finding of the court, which is supposed to imply that he was some sort of a bankrupt, expressly declares, that he "was

not such a bankrupt as to excuse the plaintiff from due diligence."

2. That it was not necessary for the defendant to shew, that he had actually been damnified, by the want of due diligence. It is sufficient, that without it, or, what is equivalent, a waiver or excuse, the plaintiff has no case. It is a condition precedent to his right of recovery. Besides, the law *implies* damage.

3. That the letter written by the defendant in relation to the commitment of *Parish*, was not a waiver of due diligence. Previous to this time, the defendant had become exonerated from liability, by the laches of the plaintiff. The friendly advice contained in the letter, could not, surely, have the effect of *reviving* an extinguished claim.

4. That the deed and bill of sale, executed, by *Parish* to the defendant, constituted no waiver or excuse. In the first place, it does not appear, that they were executed with reference to the indorsement in question; but as they were executed after the defendant had become discharged from such indorsement, and as the defendant was otherwise liable to the full amount of the property assigned, the fair inference is, that they were not executed with reference to such indorsement. In the next place, it does not appear, that the assignment embraced *all* the property of *Parish*. In *Bond* & al. v. *Farnham, 5 Mass. Rep.* 170. the indorser had taken an assignment of all the maker's property, for the express purpose of meeting the indorsement; and the court very properly decided, that he should not afterwards insist on a fruitless demand on the maker, or a useless notice to himself, to avoid the payment of a demand, which, on receiving security, he had undertaken to pay. No case has gone further than this.

HOSMER, Ch. J. An indorsement of a note not negotiable contains a warranty, by the indorser, that the maker is of ability to pay it, and that it is collectible, by the use of due diligence. *Swift's Ev.* 342. *Bradley* & al. v. *Phelps, 2 Root* 325. *Huntington* v. *Harvey, 4 Conn. Rep.* 124. *Welton* v. *Scott, 4 Conn. Rep.* 527.

The terms *due diligence,* as applicable to this subject, have often been defined, and have an established signification. They import, unless when the note arrives at maturity, the maker is utterly insolvent, so that process against him must be unavailable, that the indorsee must put it in suit, by an attachment, and pursue the most rigorous measures for the collection of the debt,

or the indorser is exonerated from his contract. *Swift's Ev.* 347. *Huntington* v. *Harvey*, 4 *Conn. Rep.* 124. *Welton* v. *Scott*, 4 *Conn. Rep.* 527. Undoubtedly, the indorser, in any explicit manner, may waive the bringing of suit upon the note, and take the responsibility on himself; but the waiver is founded on a manifested intention to relinquish, and must be clear and satisfactory. In *Bond & al.* v. *Farnham*, 5 *Mass. Rep.* 170. it was decided, and, in my opinion, correctly, that if the maker of a promissory note, *before it becomes due*, assigns *all* his property to his indorser, the latter is considered as waiving demand and notice. So, if an indorser receives security to meet a particular indorsement, he waives a demand and notice, in respect of that indorsement, but not as to any other. *Vid.* the case above cited, and *Corney* v. *Mendez Da Costa*, 1 *Esp. Rep.* 302. *Tower* v. *Durrell*, 9 *Mass. Rep.* 332, 4. *Barton* v. *Baker*, 1 *Serg. & Rawle's Rep.* 334. But, as was said in *Tower* v. *Durell*, " it would be going too far, to say, that an indorser, who, supposing a regular demand and notice to have been made and given," (that is, who considers his responsibility to be fixed,) " and believing himself chargeable, takes measures for his indemnity against his supposed liability, becomes thereby chargeable."

In the case before us, *Parish* was found not to be such a bankrupt, as to excuse the plaintiff from due diligence, by legal process. From the lapse of time subsequent to the period, when the guaranty expired, before the commencement of an action against the maker, the indorser became exonerated from his responsibility, unless there was, on his part, a waiver of suit.

An endeavour has been made to change the well established principle on this subject, by obliging the defendant to show, that he has been subjected to damage, by reason of the plaintiff's omission to sue. The law always implies damage, from the breach of an obligation, arising out of contract; and neither justice nor convenience will admit of an enquiry, whether actual damage was sustained. It was formerly held, that it was incumbent on the person insisting on the want of notice, or other omission, to prove, that he had really sustained damage, by the laches of the holder; but it has been settled, by later decisions, that such damage is to be presumed, and that the only excuse for the omission, is the proof of the want of effects in the hands of the drawer of a bill of exchange. *Chitt. Bills*, 358. *Phil.* ed. of 1821. Upon the same principle, the only excuse for the omission of suit, is the utter insolvency of the maker of a

promissory note, or a satisfactory waiver, by the indorser. This rule presents a land-mark, to test the obligation of an indorser, while the other principle would produce utter uncertainty, and endless controversy.

A waiver by the defendant, has been supposed to arise from the omission, with his approbation, to imprison the debtor, and from the indemnity, obtained by him, against certain specified claims.

As to the first, the imprisonment of *Parish,* if the indorser was exonerated from responsibility, would not have availed the plaintiff; and this was the precise fact. Now, the omission to do that, with the defendant's assent, which, if it had been done, would not have rendered him responsible, can have no effect in the case.

From the indemnity, supposed to be acquired, no intention to relinquish any measure requisite to onerate the indorser, can rationally be inferred. If the defendant believed himself chargeable, and took measures for his indemnity against a supposed liability, this did not resuscitate an extinguished right, nor revive a contract, that had expired. The fact, in my opinion, is not supported, that the defendant received a conveyance of property, to indemnify himself from the indorsement of the note in suit, but from other liabilities only. This point, however, is not worth insisting on, as the transaction, if the note in suit was the object of the indemnity acquired, was founded in mistake, or resorted to, from abundant caution; and never was designed to give life to a demand, which had no existence.

The other Judges were of the same opinion.

New trial not to be granted.