## Case No. 5,691.

### In re GRANT et al.

[6 Law Rep. 158.]

District Court, D. Massachusetts. April, 1843.

PROMISSORY NOTE—DEMAND OF PAYMENT—INSOLVENT INDORSER.

1. On a note made payable "on demand after date with interest," there were demand and notice more than five years after date. *Held*, not within a reasonable time.

2. The mere fact that the indorser of a note is a member of the firm by which it is made, will not excuse a demand and notice, although the firm were insolvent when the note was given, and the indorser knew that it was not paid.

3. A member of an insolvent firm, in settling up their concerns, gave a note signed by the firm, payable to his own order "on demand after date with interest," and by him indorsed. No demand was made and notice given, until after five years from the date of the note. *Held*, that the private estate of the indorser, in bankruptcy, was not liable for the amount of the note.

In bankruptcy. This was a motion by the assignee to expunge a proof of debt, filed by the Globe Bank against the private estate of Benjamin B. Grant, as indorser of a note for thirty-six thousand dollars, signed by Grant, Seaver, & Co., a firm of which Grant was a member, and which was in bankruptcy. The Globe Bank also proved the same note against the copartnership estate of the bankrupts, as makers of the note, claiming a dividend on the balance due, about eighteen thousand dollars, against the separate estate of Grant, as indorser, and the joint estate of the partners, as makers, in accordance with Farnum's Case [Case No. 4,674]. The note in question was made on September 26, 1838, payable "on demand after date with interest." There was no demand on the makers, or notice to the indorser until February 19, 1843. At the time the note was given, Grant, Seaver, & Co. were insolvent. Grant was principally engaged in closing up the business, and this note was given to the Globe Bank by him on a settlement, it being for the balance then found to be due to the bank. The note was not proved until the second dividend was about to be declared; and the assignee moved to expunge the proof against the private estate of Grant, on the ground that he was not liable as indorser of the note.

H. H. Fuller and P. W. Chandler, for assignee.

Charles B. Goodrich, for the Globe Bank.

SPRAGUE, District Judge. The question first presented at the bar relates to the demand and notice. Was any demand necessary; and if so was it made in a reasonable time, or has it been waived? The note was payable on demand after date with interest.

No demand was made until after the lapse of five years and four months—and not only after the makers and indorsers had all gone into bankruptcy, but nearly six months after the first dividend on the estates had been declared; nor until after the proof of debt in this case by the bank. Without undertaking to determine with precision what would be a reasonable time for making a demand, it is sufficient to say, that there is no precedent or opinion which allows a latitude approaching to the length of time which had elapsed here. All the parties here have during the whole term remained in Boston; and I am of the opinion, that if from the circumstances of this case, a demand could be delayed until the 14th of February last, and until after this very proof of debt now moved to be expunged was made, it could be dispensed with altogether. It is contended, that the offer of Grant to compromise and settle the note, was a waiver by him as evidence of demand and notice. The evidence does not, I think, warrant such an inference. He was endeavoring, as he states, to settle the affairs of Grant, Seaver, & Co., the makers, and that in his conversations with the officers of the bank it was always credited as the debt of the firm, and his indorsement was never referred to. Nothing was said or done with reference to his indorsement, and which might not well have exclusive reference to the obligations of the makers. The question then, is, whether a demand was necessary. It has been finally urged that it was not. First, because Grant, the indorser, was a member of the firm of Grant, Seaver, & Co. and always knew that the note was unpaid, and the makers had no means of payment. The cases cited most directly to this point were Gowan v. Jackson, 20 Johns. 176, and Porthouse v. Parker, 1 Camp. 82. They are both cases of a bill drawn by one partner on the firm, and duly presented for acceptance and payment, but notice of refusal not given to the drawer; and it was held, that as the drawer was one of the persons who had refused acceptance or payment, and must therefore have known of the dishonor, notice of that fact need not be given. In the case before us, there was no demand. Dwight v. Scovil, 2 Conn. 654, cited on the other side, was an action by the indorsee of a note against the indorsers. One of the firm which indorsed the note was also a member of the firm which made it; but it was decided, that demand and notice were necessary. Dickins v. Beal, 10 Pet. [35 U. S.] 572, was a case of a bill drawn without funds or authority to draw; a demand was duly made, but notice not given. It was held, that the drawer was not entitled to notice. In Copp v. McDugall, 9 Mass. 1, the payee of a note had negotiated it, knowing that it was not valid against the makers, and after the indorsee had failed in a suit upon it against the maker, he told the indorsee he was ready to pay it. Held,

that no demand or notice was necessary. These are all the cases which were cited in the opening argument to sustain this position. Neither of them is precisely in point. The cases subsequently added are not more so.

The second ground for dispensing with demand and notice, is, that Grant had the custody and control of the property of the makers, as a member of the firm, and also by an appointment of the copartners to settle their affairs. Grant states that he conducted the settlement and adjustment of the affairs of the company. But he does not state, that he had any new and special authority or conveyance of property for that purpose; and I do not think that we are to infer, that he had any other custody or control of the property than as a corporation. It has been held, that where an indorser had received a conveyance of property from the maker of a note for the express purpose of securing him against his indorsement, demand and notice may be dispensed with. Such were Mead v. Small, 2 Greenl. 207, and Mechanics' Bank v. Griswold, 7 Wend. 165, and the earlier case of Bond v. Farnham, 5 Mass. 170, in which the court take the ground, that when the indorser represented to the maker, that he was liable and took security, he undertook to pay absolutely; that the intention was, that his promise should be no longer conditional; and in Prentiss v. Danielson, 5 Conn. 175, the court consider the taking such security to be a waiver of demand and notice, in other words an absolute promise to pay. In these cases, the makers, by the intervention of the indorser, were either wholly or in part deprived of the means of payment. In the case before us, whatever property Grant held, was in his control at the time of making the note and in his character of copartner, that is, as one of the makers. But it has been urged with much force, that those cases, although not in all the circumstances precisely like the present, establish a principle which embraces it, that a demand is not necessary when it would be wholly vain and useless. These cases rest either on some deceptive practice, as in drawing without funds, transferring a void note, or on the supposed intention of the parties not to require an act wholly useless. The paramount principle of all the cases dispensing with demand and notice, is to carry into effect the honest intention of the parties and do substantial justice between them. This controlling principle is to be kept constantly in view. The indorser of a note is bound only by virtue of his contract. That contract is such as he chooses to make it. If he indorses in blank, the law implies a promise to pay on the condition of due demand and notice. Under certain circumstances; the law implies an absolute promise: that is, presumes that it was the intention of the parties to dispense with a condition wholly

useless. All the reasoning of the cases and ·the rules laid down and exceptions intro- ·duced, are only to ascertain and carry into effect the real and honest intention of the parties. Suppose Grant, in this case, when :he made his indorsement, had expressly stip- ulated, that he should not be holden in any ·event as indorser, nobody doubts that he would have been protected from liability, .and if he had expressly stipulated, that he ·should be holden only after demand and notice, it is clear, that such condition must have been complied with. The manifest in- tention of honest parties must be carried ·into effect, and circumstances are resorted to only to ascertain such intention when left in doubt. It is to be borne in mind, that all ·the facts which go to dispense with demand, existed at the time the note was indorsed; .and if Grant is liable, it must be on the ground, that it was then intended that he ·should be bound absolutely and without con- dition. It is not contended, that there was .any express promise by Grant, to pay ab- solutely as indorser; but it is urged, that the note was not made for circulation, dis- ·count, or commercial purposes, but under pe- culiar circumstances, and ' therefore that Grant is not entitled to claim the privileges ·of general commercial paper. In other words, that the law, from these circumstan- ·ces, implies an absolute and not a condition- .al promise to pay. On the other hand, it is insisted, that the legal inference, from ·these 'extraordinary circumstances, is pre- cisely the reverse; that so far from raising .an absolute promise, they imply no promise whatever. Indeed, the learned counsel went further, and urged, that the whole circum- stances of the ·case furnished proof, that it was expressly agreed, that Grant should ·not be holden as indorser. But I do not see any satisfactory evidence of such express agreement, and if any such had been made, ·it is reasonable to suppose, that the indorse- ment would have been without recourse; :and, on the other hand, if there had been an actual agreement to be holden absolutely, it would probably have been expressed by .an indorsement waiving demand and notice, to prevent all doubt.

The truth manifestly is, that it was not ·deemed by the parties, at the time, a matter ·of any importance whether Grant was hold- ·en as indorser or not, and they took no care ·or thought about it. Grant being bound, at .all events, as maker of the note, the bank had as perfect right to resort to his private :property, as well as that of the firm, as if he was also holden as indorser. The firm had failed, having been indebted to the bank, in :a much larger amount, upon which pay- ments had, from time to time, been made. When they came to account together, it was found that this balance of about thirty-six thousand dollars, was due from the firm, :and, thereupon, as a matter of convenience, ·the paper previously holden against the firm,

was given before, and this new note was made. Grant made the settlement, signed the name of the firm to the note as makers, inserted his own name as the person to whose order it was to be paid, and then in- dorsed it in blank. This was the only con- sideration, and although it might be suffi- cient in law to sustain an actual promise by the indorser to pay, yet, in considering what was the real intention of the parties, and the rights and obligations which the law will imply, the fact, that nothing of actual value was parted with, or received, is not unimport- ant. The bank held collateral security, which Grant says he always considered suf- ficient, or nearly sufficient, to secure this note. That they did not, in fact, regard the indorsement as of any moment, or rely in any degree· upon it, is manifest from other circumstances. They well knew the general rule of law, that indorsers are not holden with- out demand and notice. Grant, and the mem; bers of the firm of Grant, Seaver & Co., all lived in Boston; yet for more than four years they take no step to render his liability cer- tain, either by demand and notice or taking his waiver thereof. On the tenth day of Jan- uary, 1843, the bank, by its president, came forward to prove this debt against the in- dorser; and this was the first claim they ever made against him. · That they did not rely on the circumstances of the case, as dispensing with the necessity· of demand and notice, or on any agreement ·to waive, is manifest from the proof made before the commissioner, 'in which due demand and no- tice are stated, and the liability of the in- dorser put upon the fact of such diligence, and nothing stated of any facts, circum- stances,· or agreements dispensing therewith. A motion was made· to expunge. this proof, after which, for the first time, demand was made and notice given, and also the ground taken, that no such diligence was necessary. This is not all. Grant, whose deposition has been introduced by the bank, testifies, that he endeavored, from time to time, to make an adjustment and compromise of this note with the bank; that he had not less than half a dozen conversations with the officers for that purpose; and that "the subject of his individual indorsement was never referred to between them; that it was always treated as a debt of Grant, Seaver & Co."

It is objected by the learned counsel for the bank, that it is not open to the assignee here to prove that it was not intended that Grant should be holden as indorser; that the law fixes the meaning of an indorse- ment, and that evidence cannot be admitted to contradict the instrument. The admissi- bility of such evidence has been, heretofore, matter of controversy. I do not think it necessary to decide that question, because all the evidence here was introduced by the bank. In Reed v. Jewett, 5 Greenl. 96, and Smith v. Tilton, 1 Fair. 350, it was decided, that a written contract may be controlled

by parol evidence, introduced by the party who subsequently objects to its effect. But here, this evidence was introduced by the bank, for the very purpose of changing the legal effect of this indorsement, to make it an absolute promise instead of a conditional one; and this is essential to their case, for as the circumstances relied upon existed at the time the note was indorsed, the contract then made is that which still binds the parties. The case of Girard Bank v. Comly, 2 Miles, 405, was in many respects similar to the present. No question of the admissibility of evidence arose, but its effect was considered, and the court held, that the indorsement created no liability. In the present case it is not sufficient for the bank to show, that some liability was assumed by the indorsement. They must go further and show, that it was not the usual conditional promise which an indorsement imports, but an absolute obligation to pay at all events. We have seen, that no such absolute promise was in fact made or intended. Is it implied by law? No precedents precisely in point are found, and no rule that embraces all the circumstances of this case. We are left then to decide it upon the true principles applicable to the case. But, as has already been remarked, the paramount principle of the cases dispensing with notice, is to do substantial justice, to carry into effect the real intention of the parties. When the law raises implied promises, it is to require parties to do, what in equity, in good conscience they ought to do, and what as honest men, it may be presumed they intended to do. I do not think, that justice requires that Grant should be holden as indorser, or that he was ever under any moral obligation as such, and although some of the circumstances, if standing alone, might perhaps have been sufficient to raise a legal implication of an absolute promise, yet they are neutralized at least by other circumstances of an opposite tendency, and from the whole no such promise is to be inferred. The proof must be expunged.

[NOTE. The bankrupt also filed a petition asking inter alia, that his wife be allowed to retain certain personal property, consisting of jewelry and ornaments, and that the assignee should be restrained from demanding the sum of $126 paid out by the bankrupt for the support of his family since the bankruptcy proceedings. An order was made refusing these requests, with some exceptions, but allowing the bankrupt an amount in compensation for his services in the care of the property. Case No. 5,693.]