[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PRELIMINARY TRIAL
The court heard the questions presented by the parties in the two captioned cases in accordance with the stipulation of all parties. The court will refer to Milton and Gayle Buck as the plaintiffs throughout this memorandum. The court will CT Page 10082 refer to Ebenstein and Ebenstein, P.C. as "Ebensteins"; Deputy Sheriff Basileo Gonzalez as the Sheriff; Arthur Esman and Neil Transportation, Inc. as the defendants.
The plaintiffs were injured in an automobile accident involving the defendants on July 9, 1987 and retained the Ebensteins to represent their interests. On July 6, 1989, the Ebensteins' office gave the Sheriff a writ, summons and complaint dated July 5, 1989 to serve upon the defendants. The Sheriff did not complete serve until July 20, 1989 which was after the expiration of the statute of limitations on July 9, 1989. The Sheriff's return of service did not indicate that he had received the writ for service prior to July 9, 1989 nor did it indicate that he had served the writ within fifteen days after the expiration of the statute of limitations as required by Connecticut General Statutes52-593a.
The defendants moved for dismissal of that action and the court (Hennessey, J.) granted said motion on December 4, 1989, ruling that the plaintiffs had failed to comply with the provisions of C.G.S. 52-593a.
The Ebensteins then filed a second action for plaintiffs against the defendants on December 18, 1989, pursuant to Connecticut General Statutes 52-592, the accidental failure statute. The defendants moved to dismiss the second action on the grounds that it was barred by the statute of limitations. The court held that the issue was one properly raised by way of a special defense and denied the motion to dismiss.
On March 11, 1991 the defendants moved for summary judgment because the second action was barred by the applicable statute of limitations. The court (Hennessey, J.) denied this motion on June 27, 191 [1991] ruling that there was a question of material fact as to whether the first action had been commenced in a timely manner and "if the sheriff received the writ, summons and complaint prior to the running of the statute of limitations and served them within fifteen days of the delivery, then the first action was commenced timely".
In July 1991, while their second action against defendants remained pending, the plaintiffs commenced suit against Ebensteins and the Sheriff claiming that the Ebensteins were negligent in failing to institute a timely CT Page 10083 action against defendants; in failing to file a supplemental sheriff's return; and in failing to amend the defective return. Plaintiffs also claimed in that action that the Sheriff failed to make a true and proper return of service in violation of his duties and failed to include with his return an affidavit stating the process had been in his hands prior to the expiration of the statute of limitations.
By stipulation dated June 10, 1993, the parties in both Buck v. Esman and Buck v. Ebenstein agreed that the court (O'Neill, J.) would decide whether the Buck v. Esman action is timed-barred or whether said action was properly and timely commenced pursuant to Connecticut General Statute 52-592.
On July 30, 1993 this Court heard testimony and oral argument on that question.
Facts
On July 6, 1989 the Sheriff went to Ebenstein's office to pick up the original writ, summons and complaint. While there he signed a form the law firm refers to as the "Sheriff's Sheet" acknowledging receipt. That sheet indicated "Service Deadline Date `as' 7/9/89". That sheet is a printed form, which is filled in by various people. It has a set of four instructions at its beginning, none of which are directed to a sheriff. The left side of the form is captioned "File Information" and under that caption we find "Case Name", "Date of Accident", "Writ or Notice Dictating Attorney UM", "Name of Defendants' Insurance Company" and "Package Submitted?" None of the items in print on the left side of the form are directed to a sheriff.
The right side of the form is captioned "Sheriff's Acknowledgement" and under it we find "Type of Document", "Service Deadline Date", "Signature of Sheriff", "Date of Sheriff's Signature", "Attorney Approving Writ/UM" and "Comp Carrier Notified".
There is some handwriting in all of the blanks below the various printed items except under "Signature of Sheriff". However, the Sheriff signed next to the handwritten "7/6/89" on the line below "Date of Sheriff's Signature".
The return date on the writ is August 15, 1989. CT Page 10084
On July 8, 1989 the Sheriff served the Demand for Arbitration under the UM statute on Hartford Insurance Group and American Arbitration Association.
This court does not know why the sheriff served the U.M. part of the case on July 8, 1989 and did not begin service of the basic negligence case until July 12, 1989. He knew the defendants were from Maine and he was told on the summons to serve both our commissioner of motor vehicles (as to Esman) and our secretary of state (as to Neil).
On July 20, 1989 the Sheriff completed service. The writ was returned to court August 9, 1989.
Plaintiffs have not sustained their Burden of Proof that Ebensteins told the Sheriff that the papers had to be served on the defendants by July 9, 1989 because the statute of limitations was going to run out on that day or for any other reason.
Law
By common law a suit is commenced in this state by service of the writ and not by delivery of the writ to the officer. Gates v. Bushnell, 9 Conn. 530, 334. Of course, the common-law rule has been modified by C.G.S. 52-593a.
The only way an attorney may extend the statute of limitations under C.G.S. 52-593a(a) is to be sure that the process is delivered to the server "within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery." In our case that was all done. What was not done was what is required under C.G.S.52-593a(b) which states, "In any such case the officer making service shall endorse under oath on his return the date of delivery of the process for service in accordance with this section." That the Sheriff did not do; nor was he asked to do it before the action was dismissed.
The court believes that subsections (a) and (b) must be read together first, because they are parts of the same section, second because in subsection (b) the expression "any such case" refers to subsection (a) and third, because the requirement of an endorsement under oath shows the seriousness CT Page 10085 of the requirement in order to support any subsection (a) action. Thus the court concludes that subsection (a) cannot be read alone and is ineffective if subsection (b) is not complied with.
An attorney admitted in Connecticut is automatically a commissioner of the superior court in this state, C.G.S.51-85, and as such "may. . .sign writs". After he signs it the normal Connecticut practice is that he deliver it to an officer to make "due service and return".
Our Connecticut attorneys were first allowed to issue writs of summons in 1921. P.A. 1921 c. 67. In re Application of Griffiths, 162 Conn. 249, 256. Sheriffs have had that power for over 200 years. Clark v. Brian, Kirby 237, 239-240 (1787). The history of our law indicates clearly that the sheriff is the one who has the duty to make the actual return to court. Frank v. Scovel II Day 480 (only arguments of both counsel).
This court does not know who returned the writ to court or who paid the entry fee. But the court does know that the attorneys were hired by plaintiffs. The attorney is the captain of the ship which keeps an action afloat. He must delegate but he cannot abdicate. It was his duty to see that the sheriff's return satisfied the statutory requirements before the writ was returned to court. As it was the attorney who was retained to bring the action, he must do it properly. Higgins v. Russo, 72 Conn. 238, 242-243.
Process is to be directed to a deputy sheriff, among others. A deputy sheriff is a "public official" and is not an employee. Rose H. Rogers v. County Commissioners, 18 Conn. Sup. 401,403. His duty is to be exercised in favor of the state for the public. id.
His authority has certain limits. He cannot act as an attorney in court. C.G.S. 51-89. Also he cannot draw or fill out any process or complaint. C.G.S. 52-127.
Upon receipt of a writ, summons and complaint the deputy sheriff has a duty to make all reasonable efforts to serve the same on the named parties, at least at the locations provided by the person issuing it. C.G.S. 6-32 Bank of Hartford County v. Waterman, 26 Conn. 323, 338. That statute also CT Page 10086 requires him to "make true return thereof". Not only is he liable for damages for failure to "return such process", id., but he also in some instances maybe liable as a trespasser if he does not. Anderson v. Cowles, 72 Conn. 335 (warrant).
The writ in our case contains a return date. The statute requires service at least twelve days before that date and return of the writ to court at least six days before that date. C.G.S. 52-46 and 48. Except as stated in those statutes and C.G.S. 6-32 which tells us that the sheriff shall "execute it promptly", we are not told when it must be served.
If a sheriff is told when process is given him that a writ of attachment is to be served immediately the sheriff is bound to do so and is answerable for his failure to do so Tucker v. Bailey, 15 Conn. 45, 49-50. "But if no such instructions are given, the officer is not bound to act with that degree of vigilance, and generally has the right to serve the process at any time within the period prescribed by law." id. 50.
When speaking of service of a writ of attachment the duty imposed on the officer is "to make all reasonable service in quest of estate". Welton v. Scott, 4 Conn. 527, 535. That case also states that the issuance of the writ "was not found to give any directions" to the officer about what to attach. The way the sheriff in that case could know in what amount to attach would be to read the writ itself which names an amount. He need not read the complaint.
The Sheriff was never asked to endorse his return under C.G.S. 52-593a but the statute provides in subsection (b) that the sheriff making service under that statute "shall endorse under oath on his return the date of delivery of the process to him for service in accordance with this section."
Subsection (a) does not speak of any requirement imposed on the issuing attorney to request the endorsement required under subsection (b). It is, as read, a blanket rule that "if the process to be served is personally delivered to an officer authorized to serve the process . . . within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery, the cause of action is not lost. CT Page 10087
When we look at our practice book we see a variety of very specific directions to the sheriff i.e. "proper officer", as shown in Form 101.5, 101.6, 101.9, 103.2, 104.4, 106.4, 204.3, 204.4, 204.7, 204.9, 404.2, 503.1, 504.2. Some of these give a last date for service, e.g. 104.4 and 504.7. Some require the sheriff to determine when the return day is e.g. 404.2, and 404.4. Some expect the sheriff to note the date for a hearing that has been ordered e.g. 506.1, 506.3 and 504.17. Of course, a mittimus orders the officer to take a person to jail. Form 508.2.
In a replevin action the sheriff is told to whom to bring the replevied goods, who now has possession of them, their location and is given a description of them. Form 604.1.
All of these forms indicate a sheriff has some duty in some cases to determine when service is to be made. In our case, Buck et al v. Esman et al #365584, the order to the officer was "you are hereby commanded to make due and legal service of this Summons and attached Complaint". It then sets out the judicial district, the town, the return date, the court clerk's address, and the names and addresses of the parties.[1] There is nothing about when service is to be effected except that by statute it must be served at least 12 days before the return date and returned to court at least 6 days before the return date. C.G.S. 52-46 and 52-46e. At the latest service was completed on July 20, 1989 and the process was returned to court on August 9, 1989. This summons form does not tell the officer to serve it by a particular date nor does it give him, in itself, a hearing date to which to relate service. If he read the complaint and if he were familiar with our statutes of limitations he could have calculated that service had to be made by July 9, 1989. We found nothing in the facts or the law which makes him responsible to read the complaint to determine the date when service must be made. We have various statutes that place limits on the time for commencement of suit, e.g. C.G.S.52-575 through 589. Of course, those statutes are tolled when a defendant is absent from this state. C.G.S. 52-590.
The court can find no negligence by the sheriff.
The Ebensteins were at fault. The case does not fall under the accidental failure of suit statute because the failure of the case to be tried on its merits was not due to CT Page 10088 either "unavoidable accident or the default of neglect of the officer to whom [the writ] was committed." C.G.S. 52-562(a).
O'Neill, J.